# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SEQUOIA SCIENCES, INC.,    :
             :
       Plaintiff,  :    No. 3:05 CV 1908 (MRK)
             :
v.            :
             :
THOMAS K. WOOD     :
             :
       Defendant. :

## RULING AND ORDER ON PRELIMINARY INJUCTION

  Presently pending before the Court is Plaintiff's Motion for a Preliminary Injunction [doc. # 4]. The case involves allegations by Plaintiff Sequoia Sciences, Inc. ("Sequoia") that Defendant Thomas K. Wood has misappropriated Sequoia's trade secrets and breached various contractual obligations to Sequoia. At the outset of the case, Sequoia filed an ex parte motion for a temporary restraining order (TRO) and, after unsuccessful efforts to locate Dr. Wood's counsel, the Court entered an ex parte TRO [doc. # 6] enjoining Dr. Wood from using or disclosing any information or formulae related to Sequoia's biofilm compounds pending a preliminary injunction hearing on December 23, 2005.

  On December 23, 2005, the Court held a hearing on Sequoia's preliminary injunction request and also on Dr. Wood's Motion to Dismiss [doc. #15]. After receiving evidence from Sequoia in support of its motion and at the urging of the Court, the parties entered into an agreement that obviated the need for the Court to rule on the preliminary injunction motion at that time. Specifically, the parties stipulated and the Court ordered [doc. # 21] that until 11:59 p.m., EST, on March 6, 2006, Dr. Wood would not disclose or use any of the Compounds, as that term was defined in the parties' Supplemental Agreement dated July 21, 2005 (the "Supplemental Agreement"). The

parties chose the March 6 date because the Supplemental Agreement expressly permitted Dr. Wood to disclose information regarding Sequoia's biofilm compounds after that date.

On February 6, 2006, after further briefing, the Court denied Dr. Wood's motion to dismiss. *See* Ruling and Order [doc. # 44].  On March 1, Sequoia moved for an extension [doc. # 50] of the Stipulated Order because it had learned during the course of discovery that Dr. Wood had withheld certain information that he had committed to provide Sequoia in the Supplemental Agreement.  The parties agreed to a voluntary extension of the Stipulated Order until March 21, 2006,  the date on which the Court would continue the hearing on Sequoia's request for a preliminary injunction beyond March 21.  *See* Order [doc. # 51].  On March 21, the Court received additional evidence, including the testimony of Dr. Wood, and granted an additional TRO until 1:00 pm on March 31, 2006, by which time the Court would have received additional briefing from the parties. The Court now GRANTS IN PART Plaintiff's Motion for a Preliminary Injunction [doc. # 4], for the reasons stated herein as well as those stated on the record in open court at the close of the hearing on March 21.

In the Second Circuit, to obtain a preliminary injunction, a plaintiff must establish the following: (1) irreparable harm; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Bronx Household of Faith v. Bd. of Educ.,* 331 F.3d 342, 348-49 (2d Cir. 2003).   The Court finds that Sequoia has satisfied this test.

As to irreparable harm, the Court finds that Sequoia would suffer irreparable harm if information regarding those of its biofilm compounds that have not previously been disclosed to the public were publicly disclosed before Sequoia has had a reasonable opportunity to seek patent protection on the basis of those compounds. Once this information is publicly disclosed, Sequoia

would not be able to seek patent protection on the basis of the information, and the Court does not believe that it would be possible to calculate with any degree of certainty the amount of money Sequoia would lose as a result of being denied the opportunity to seek patent protection. Furthermore, in the so-called C84 Agreement (¶ 3), Dr. Wood agreed that any threatened or actual unauthorized disclosure of any research or results would entitle Sequoia to a preliminary injunction. Together, these factors sufficiently establish irreparable harm. *See, e.g.*, *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (finding irreparable harm on the grounds that "loss of trade secrets cannot be measured in money damages because [a] trade secret once lost is, of course, lost forever," and Defendant's "acknowledgment in his Employment Agreement that a breach of the confidentiality clause would cause 'irreparable injury' to [Plaintiff]." (internal quotation marks omitted)).  The Court is satisfied that a damages remedy would not suffice in these circumstances.

As discussed and disclosed at the March 21 hearing, certain of Sequoia's compounds and information regarding them have already been publicly disclosed by Dr. Wood and others, and as to those compounds, Sequoia could not suffer irreparable harm from further disclosure.  For this reason, the Court grants Sequoia's motion only in part, narrowly tailoring it to cover only those biofilm compounds and information not previously disclosed to the public. *See* Plaintiff's Reply to Defendant's Supplemental Response to Plaintiff's Motion for Preliminary Injunction [doc # 68].

The Court is also satisfied that Sequoia has shown sufficiently serious questions going to the merits of their claims to make them a fair ground for litigation and also shown a balance of hardships tipping decidedly in its favor.  Under Connecticut's Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 *et seq*, a complainant may seek either damages or injunctive relief for a misappropriation of trade secrets.  In relevant part, the Act defines "trade secret" as:

> information, including a formula, pattern, compilation .. . method, technique, [or]
> process . . . that: (1) Derives independent economic value, actual or potential, from
> not being generally known to, and not being readily ascertainable by proper means
> by, other persons who can obtain economic value from its disclosure or use, and (2)
> is the subject of efforts that are reasonable under the circumstances to maintain its
> secrecy.

*Id.* § 35-51(d). Sequoia has presented sufficient information for the Court to conclude that Sequoia is likely to succeed in showing that its biofilm compounds (and the information derived from research on them) meet the definition of trade secret in the act. Certainly, the Research Agreement, C84 Agreement and Supplemental Agreement all show that Sequoia has taken reasonable steps to protect the secrecy of that information. And Mr. Eldridge's testimony establishes that Sequoia has already derived economic value from its trade secrets and that it expects in the future to derive further economic value from that information.

"Misappropriation" is defined in the Act to mean "disclosure or use of a trade secret of another without express or implied consent by a person who . . . (B) at the time of the disclosure or use knew or had reason to know that his knowledge of the trade secret was . . . (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . ." Conn. Gen. Stat. § 35-51(b). The Court is satisfied based upon the evidence that Sequoia has shown more than fair grounds for litigation on the issue of whether Dr. Wood's conduct amounted to misappropriation. Dr. Wood admits that on several occasions he disclosed Sequoia's trade secret information without consent and in direct contravention of his confidentiality undertakings to Sequoia. Dr. Wood has also admitted that he threatened further disclosures in the fall of 2005, when he became angry with Sequoia, and that he consciously declined to comply with several of his obligations under the Supplemental Agreement (a subject discussed below). Therefore, Sequoia has shown past

misappropriations by Dr. Wood as well as a threat of future misappropriation.  Indeed, it appears to the Court that Dr. Wood does not take his secrecy obligations seriously.

In briefing and at argument, Dr. Wood claimed that he had the right under the Supplemental Agreement to disclose Sequoia's trade secrets on and after March 6 and that, as a result, any future disclosures would be authorized by the Supplemental Agreement and would not constitute "misappropriation" under Connecticut's Trade Secret Act.  The Court concludes that Dr. Wood cannot rely on the March 6 disclosure date in the Supplemental Agreement for the simple reason that he has consciously and repeatedly breached his obligations under that Agreement.  Having breached the Agreement himself, he cannot now rely on it to justify his conduct.

As Dr. Wood admitted, the purpose of the March 6 date was to give Sequoia about six months to evaluate the information in Dr. Wood's possession regarding his research on Sequoia's biofilm compounds and if appropriate, to seek patent protection on the basis of that information.  Thus, the Supplemental Agreement gave Sequoia a six-month confidentiality window between the date on which Sequoia would receive Dr. Wood's research results and the date on which Dr. Wood could make public disclosure of Sequoia's trade secret information.

But Dr. Wood himself admits that he deprived Sequoia of the six-month window for which they had bargained. For contrary to the express and explicit terms of the Supplemental Agreement, Dr. Wood did not immediately turn over to Sequoia all of the information in his possession regarding his research on Sequoia's biofilm compounds; nor did he immediately provide Sequoia with two proposed research articles that are referenced in the agreement or with the results of the further research Dr. Wood conducted in response to comments on his proposed articles (comments that he also was supposed to disclose to Sequoia but did not).  It was not until Sequoia served discovery

5

requests on Dr. Wood in this action that he finally produced all of the documents he was required to disclose to Sequoia under the Supplemental Agreement. Those documents, which included data, laboratory notes and the proposed articles, totaled about 4800 pages. Mr. Eldridge testified, and Dr. Wood confirmed, that some of the 4800 pages only recently disclosed to Sequoia contain important information about the biofilm compounds to which Sequoia was entitled under the Supplemental Agreement, but which Dr. Wood did not disclose to Sequoia until he responded to its discovery requests. Dr. Wood provided no credible excuse for consciously choosing to ignore his obligations under the Supplemental Agreement. He admits he was not counseled to do so by University of Connecticut authorities or lawyers. He simply decided to breached his obligations to Sequoia, thereby depriving the company of the six-month confidentiality window for which it had bargained. In these circumstances, the Court concludes that Dr. Wood cannot rely on the March 6 date in the Supplemental Agreement to authorize further disclosures of Sequoia's trade secrets.[1]

The Court will observe that Sequoia itself has been rather tardy in asserting its right to obtain the information that Dr. Wood withheld from it. For example, Sequoia certainly knew that Dr. Wood's  articles had not been disclosed to it, yet the company waited until December to file this

---

[1] In a Motion for Judgment on the Pleadings [doc. # 47] Dr. Wood has argued that the University of Connecticut, a signatory to the Supplemental Agreement, is an indispensable party because Sequoia is seeking to rescind the Agreement. Moreover, he contends that the lawsuit must be dismissed because the University, which enjoys the State's sovereign immunity, cannot be joined in this action. *See* Fed. R. Civ. P. 19. Dr. Wood seriously misconstrues Sequoia's argument. Sequoia is not seeking to rescind the Supplemental Agreement but rather to enjoy the benefit of the six-month window that the agreement provides. Also, Sequoia does not claim that the University has breached any of its obligations under the Agreement, only that Dr. Wood has. In these circumstances, the University is not indispensable. Even if it were, the Court would not be obliged to dismiss the action in the University's absence because the Court can tailor any relief it awards to avoid any prejudice to the University. *Id.* Rule 19(b). Therefore, "equity and good conscience" would not require dismissal of this action. *Id.*

lawsuit. Nonetheless, the Court concludes that the balance of hardships tips decidedly in Sequoia's favor, and that Sequoia is entitled to the benefit of the bargain that it struck in negotiating the Supplemental Agreement. The Court believes it is equitable and just to forbid Dr. Wood from making any disclosures for a few more months (not the full six in view of Sequoia's own laches), in order to give Sequoia time to evaluate the newly received information from Dr. Wood and to seek patent protection if appropriate. In view of his admitted conduct, the Court would have hoped that Dr. Wood would voluntarily agree to such an order. Regrettably, he has not done so, and so the Court is forced to act to prevent him from inflicting irreparable harm on Sequoia contrary to his own freely undertaken commitments in the Supplemental Agreement.

One further issue warrants discussion.  Dr. Wood has argued that since he is now a professor at Texas A&M University, a state university, his future conduct is cloaked with the sovereign immunity of the State of Texas, and thus the Court lacks jurisdiction under the Eleventh Amendment to grant the requested injunction. Plaintiff's well-pleaded allegations against Dr. Wood, which the Court must at this stage accept as true, are that Dr. Wood is liable for  wilful violation of contractual obligations to guard Sequoia's trade secrets, obligations that he assumed in his personal capacity and by which he was constrained long before assuming his present employment with the State of Texas. Accordingly, Plaintiff has asserted, and the Court has found, that this suit is brought against Dr. Wood in his individual capacity, for personal violations of Connecticut state law. *See* Order [doc. #44].  Despite the Court's prior resolution of this issue, Dr. Wood urges the Court to consider this suit as one brought against him in his official capacity, and therefore barred by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 122 (1984), which held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State

that is protected by the Eleventh Amendment." The Court remains unconvinced.

Dr. Wood is correct that "[w]hether a suit is one against a state is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 652, 687 n.6 (1949) (internal quotation marks omitted). However, just as "the denomination of the party defendant by the plaintiff" cannot be "the sole test of whether a suit was against the officer individually or against . . . the sovereign," *id.* at 687, vigorous but utterly non-specific averments that injunctive relief against violations of privately assumed obligations will interfere with an individual's official tasks cannot be sufficient to confer immunity. Dr. Wood has presented this Court with no evidence, whether by testimony, affidavit or otherwise, that the narrowly tailored relief sought by Plaintiff would prevent or impair him from effectively carrying out his duties as a Texas A&M professor. Indeed, on the record before it, the Court must assume to the contrary, since Texas A&M chose to employ Dr. Wood as a professor at a time when he was constrained by confidentiality provisions of the Supplemental Agreement – constraints that were far more expansive that the extremely time-limited and substantively narrower order of injunctive relief that this Court intends to enter.  It is simply not credible in the Court's view for Dr. Wood to assert that requiring him to comply with contractual obligations that he freely undertook before ever joining Texas A&M's faculty will so undermine or interfere with his ability to carry out his official duties to the State of Texas that any decree this Court may enter would operate against the State of Texas in contravention of the Eleventh Amendment.  Accordingly, the Court adheres to its previous ruling that Sequoia's suit is brought against Dr. Wood in his individual capacity, and as such it is not barred by the Eleventh Amendment.

The Court therefore GRANTS IN PART Plaintiff's Motion for a Preliminary Injunction [doc. # 4].  The Court will issue a separate order embodying the preliminary injunction.  If Dr. Wood is uncertain whether any particular disclosure would violate the Court's Order of Preliminary Injunction he may seek clarification from the Court in advance of making such disclosure. The Court also DENIES Dr. Wood's Motion for Judgment on the Pleadings [doc. # 47].  The parties are directed to proceed with preparing this case for trial in accordance with the Court's Scheduling Order [doc. # 67].

IT IS SO ORDERED,


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: <u>March 31, 2006</u>**.